The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMTAX HOLDINGS 260, LLC, an Ohio limited liability company, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WASHINGTON STATE HOUSING FINANCE COMMISSION, a public body Corporate and politic of the State of Washington, *et al.*,<br><br>Defendants. | NO. 2:20-cv-1698<br><br>**ORDER GRANTING DEFENDANT WASHINGTON STATE HOUSING FINANCE COMMISSION'S MOTION TO DISMISS** |

## I.     INTRODUCTION

This matter comes before the Court on a Motion to Dismiss filed by the Washington State Housing Finance Commission ("Commission" or "Defendant"), seeking dismissal of the first Amended Complaint ("FAC"). Having reviewed the briefs filed in support of and opposition to the motion, the exhibits attached thereto, and the remainder of the record, the Court finds and rules as follows.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 1

## II.   BACKGROUND

**A. The Low Income Housing Tax Credit Program**

In 1986, Congress created the Low Income Housing Tax Credit ("LIHTC") program to encourage private investment in the building and maintenance of affordable and low-income housing. *See* FAC, ¶¶ 2, 49; 26 U.S.C. § 42. Under this program, the federal government, in collaboration with state housing agencies, allocates tax credits to private entities that invest in qualified affordable housing projects that meet certain requirements, such as rent restrictions. The tax credits are available over a ten-year period, subject to recapture for an additional five, for a total 15-year "compliance period." FAC, ¶ 4. LIHTC projects are often structured as limited partnerships between private investors, which provide the necessary capital and receive the tax credits; and non-profit developers, which have expertise in affordable housing development and operations. By many measures, the LIHTC program is one of the country's most successful low-income housing initiatives, responsible for having helped create some 3 million affordable housing units over the last 30 years. FAC, ¶ 3.

Defendant the Commission is the agency charged with administering the LIHTC program in Washington. FAC, ¶ 33. Plaintiff Alden Torch Financial LLC is a Denver-based private investment management company, which owns or manages a portfolio of LIHTC investments on behalf of, among others, Plaintiffs AMTAX Holdings 260, LLC and AMTAX Holdings 114, LLC (the three entities, collectively, "Plaintiffs"). FAC, ¶¶ 30-32. Both AMTAX Holdings 260 and AMTAX Holdings 114 are investor/limited partners in LIHTC partnerships operating housing projects that are located in Washington, and have been involved in litigation over control of those LIHTC partnerships in this state. *See Senior Housing Assistance Group v.*

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 2

*AMTAX Holdings 260, LLC, et al.*, No. C17-1115-RSM, 2019 WL 1417299 (W.D. Wash. Mar. 29, 2019); *Hidden Hills Mgmt., LLC v. AMTAX Holdings 114, LLC*, No. 3:17-cv-06048, 2019 WL 3297251 (W.D. Wash. July 23, 2019).

### B. The Commission's LIHTC Investor Transfer Policy and Report

*1. Transfers of LIHTC Partnership Interest*

According to the Commission, there has been an increase in activity that the Commission believes threatens the long-term viability of LIHTC projects in Washington. Certain private investors (such as Plaintiffs) purchase an interest in LIHTC project partnerships from a limited partner towards the end of the project's compliance period, after that limited partner has already received the allotment of tax credits associated with the project. Then, rather than allowing the partnership's general partner (a developer, typically but not always an affordable housing nonprofit, called a "sponsor") to continue operating the housing project as affordable housing, as the program has traditionally operated, these investors instead use tactics—often involving litigation with the sponsor—that the Commission claims are calculated to acquire control of the partnership. This activity culminates in enabling the investor to sell the property on the open market at a substantial profit.

These efforts have been particularly noted in regions of the country—such as Washington—that experience substantial growth in the value of real estate, creating a greater incentive for investors to maximize gains from the sale of a project property. Because these deals may ultimately take projects out of affordable housing, the Commission has characterized them as a threat to the LIHTC program's goal of providing "projects that are affordable to the lowest income tenants for the longest period of time." Dkt. No. 33-1 at 6. While the LIHTC was

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 3

conceived as a way of leveraging private profit motive through the incentive of tax credits, according to the Commission, these attempts to wrest additional value from the LIHTC projects threatens to "undermin[e] the intended functioning and goals of the LIHTC program." *Id*. at 5.

       2. *Changes to the Commission's Tax Credit Compliance Procedures Manual and Project Transfer Requirements*

This lawsuit is Plaintiffs' challenge to two distinct actions that the Commission has recently taken in response to these developments. First, the Commission published a policy rule, the first version in August 2019 and amended several times, that provided for increased scrutiny of the transfer of LIHTC partnership interests towards the end of a compliance period. Specifically, the rule as originally written in 2019 stated that the Commission would consent to a transfer of a LIHTC partnership interest only if the transferee certified it had not "engaged in litigation concerning a sponsor's ownership interest" of a LIHTC project in the past. FAC ¶ 12; *see* Tax Credit Compliance Procedures Manual, Ch. 9 Property Transfers, Dkt. No. 21-1 at 23. Plaintiffs and other investors complained that this rule, as written, would have prevented a transfer even to an entity that had merely defended itself from frivolous ownership claims, and even if the transferee had prevailed in that dispute. Therefore, in response to criticism from interested parties, the Commission revised the rule in October 2020, modifying the standard to allow transfer if the prospective transferee had been involved in such litigation, if it could demonstrate that (1) "each claim filed against it was no fault of the Transferee's and (2) the Transferee has consistently acted in furtherance of the Low Income Housing Tax Credit Program's goals." *See* Dkt. No. 21-1 at 43, 52-53.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 4

Unsatisfied with this revision, Plaintiffs filed this lawsuit in November 2020. Partly in response, in February 2021 the Commission again revised the policy. This third and current version of the rule, which is the subject of Plaintiffs' challenge as outlined in their Amended Complaint, reserves the Commission's right to disallow a LIHTC transfer based on, among other considerations, (1) a finding that the "Transferee has been part of a LIHTC ownership/project that subsequently was found by a court or administrative body to be in violation of a LIHTC statutory or regulatory requirement or covenant," or (2) a "Judicial or administrative finding against the Transferee of causing actionable harm to a LIHTC project or partner; committing fraud; or violating a LIHTC requirement or covenant." Dkt. No. 33-1, 6-8. The current iteration of the policy requires a potential transferee to fill out a "Financial Solvency and LIHTC History Form" and provide information on prior litigation activity. This version states that "[p]rior judicial findings against a party will be considered to evaluate the party's fitness as a potential project partner within the LIHTC program," but also states that the Commission "will not penalize any party's mere exercise of legal rights, including the right to have LIHTC partnership disputes resolved through litigation." Dkt. No. 33-4 at 2.

  3. *September 2019 Report*

The second action challenged by the FAC is a report published by the Commission in September 2019, titled "Nonprofit Transfer Disputes in the Low Income Housing Tax Credit Program: An Emerging Threat to Affordable Housing" ("Report"). *See* Dkt. No. 21-1 at 2-18. In the 18-page Report, the Commission provides a history of the LIHTC program and outlines the recent increase in litigation between investors and sponsors over control of LIHTC partnerships, expressing the Commission's view that such disputes threaten the LIHTC program's goals. *Id*. at

4. ("In recent years, however, some private firms have begun to systematically challenge nonprofits' project-transfer rights and disrupt the normal exit process in hopes of selling the property at market value. Rising values in certain markets have created an opportunity for these firms to profit far beyond the original investors' expectations.'). These transfer disputes are generally not subject to the Commission's direct regulatory authority, and are usually brought in the form of lawsuits. The Report therefore does not carry any regulatory weight. Instead, the Report was designed as an expression of the Commission's view as to these disputes, and was intended to encourage courts to resolve such disputes in favor of LIHTC project sponsors. *Id*. at 5. ("This report explains that using established principles of construction, given the fundamental policies reflected in the LIHTC statute, ambiguities in the statute and in related partnership agreements—including as to the nature of nonprofit transfer rights in particular—should be resolved in favor of nonprofit ownership and low-income housing. Courts should adhere to these principles to help clarify applicable law, resolve and prevent burdensome transfer disputes going forward, and preserve LIHTC projects as low-income housing, as Congress intended.").

### III.   DISCUSSION

The Commission's Motion to Dismiss challenges Plaintiffs' FAC on several independent grounds. First, the Commission argues Plaintiffs' challenge is moot; second, that it is not ripe; and third, that Plaintiffs' facial challenge to the current rule fails as a matter of law.[1] The Commission also seeks dismissal of any claims Plaintiffs may be asserting based on publication of the Report.

---

[1] Because the Court concludes Plaintiffs' challenge to the rule is not ripe, it does not reach the Commission's request for dismissal of the claims on substantive grounds.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 6

### A. Whether Plaintiffs' Claims Are Moot

Plaintiffs filed their original Complaint in November 2020, challenging the second (October 2020) version of the rule. As noted above, the Commission revised the October 2020 version in February 2021. After the Commission filed a motion to dismiss the original Complaint, arguing that in light of the February 2021 revisions Plaintiffs' claims were moot, in April 2021 Plaintiffs filed the FAC, which includes additional allegations related to the third and most recent version of the rule.

In this Motion to Dismiss, seeking dismissal of the FAC, the Commission maintains that Plaintiffs' claims are still moot. The Commission argues that although Plaintiffs have made some superficial changes to their original complaint, the FAC continues to essentially be a challenge to a "Litigation Penalty" as it was originally written, and not as it currently is. Plaintiffs respond that the FAC challenges the third, most recent version of the rule, not the original or the second superseding version, and that their claims are therefore not moot.

The Commission's argument is not without basis, as Plaintiffs themselves repeatedly conflate the old policies with the new. For example, in their response to the Motion, Plaintiffs argue that "no further factual development is needed here, as the record has been fully developed in the two years since the WSHFC first implemented the Litigation Penalty." Pls.' Opp. at 7. Plaintiffs also devote much of the focus of the FAC to criticism of the first two versions of the rule, which have been superseded, and repeatedly refer to various aspects of all three versions collectively as the "Litigation Penalty." *See e.g.* FAC, ¶¶ 13, 28, 117-27. Nevertheless, Plaintiffs assert that their challenge is to the current iteration of the policy, and not to either the first or

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 7

1  second versions. The Court takes this representation at face value, and concludes that the claims

2  are not moot.

3         **B. Whether Plaintiffs' Claims Are Ripe**

4        The Commission's second challenge to the FAC is that Plaintiffs' claims are not ripe.

5  "Courts have regularly declined on prudential grounds to review challenges to recently

6  promulgated laws or regulations in favor of awaiting an actual application of the new rule."

7  *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 837 (9th Cir. 2012). The

8  ripeness inquiry in this context is particularly important, as it "assure[s] that concrete

9  adverseness which sharpens the presentation of issues upon which the court so largely depends

10 for illumination of difficult constitutional questions." *Pence v. Andrus*, 586 F.2d 733, 738 (9th

11 Cir. 1978). "In evaluating the prudential aspects of ripeness, our analysis is guided by two

12 overarching considerations: the fitness of the issues for judicial decision and the hardship to the

13 parties of withholding court consideration." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d

14 1134, 1140 (9th Cir. 2000) (citation omitted).

15       *1. Fitness of Issues for Judicial Decision*

16       As to the first inquiry, issues are fit for judicial decisions where they "are primarily legal,

17 do not require further factual development, and the challenged action is final." *Stormans, Inc. v.

18 Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (citation omitted). There is no dispute that the

19 Commission's rule is a final action. Instead, the Commission argues that Plaintiffs' claims are

20 not ripe because they require further factual development. The Commission notes that Plaintiffs

21 have not applied for a transfer of interest in any LIHTC partnership since implementation of the

22 current version of the policy in February 2021 (or, for that matter, since the original rule's

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 8

promulgation in 2019). Needless to say, the Commission has not rejected any such application, let alone done so based on any criteria that Plaintiffs challenge in this lawsuit. Plaintiffs have not identified any Washington LIHTC partnership they even *might* seek to acquire an interest in. Instead, Plaintiffs merely argue in conclusory fashion that "no further factual development is necessary" as the record is "fully developed." Pls.' Opp. at 7-8.

The Court concludes that under these circumstances, further factual development is necessary for the Court to properly adjudicate Plaintiffs' claims. The Ninth Circuit's "firm prediction" rule on which Plaintiffs rely does not aid their cause. According to that standard, a court should adjudicate the constitutionality of a rule, even though the rule has not yet been applied, if the court can make a "firm prediction" that the rule will be applied in a way the plaintiff fears. *See Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1436 (9th Cir. 1996). In adopting this rule, the Ninth Circuit cited a Justice O'Connor concurrence opining that "[i]f it is 'inevitable' that the challenged rule will 'operat[e]' to the plaintiff's disadvantage—if the court can make a firm prediction that the plaintiff will apply for the benefit, and that the agency will deny the application by virtue of the rule—then there may be a justiciable controversy that the court may find prudent to resolve." *Id.*, citing *Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 69 (1993) (O'Connor, J., concurring).

While the Commission plainly has a cynical view of Plaintiffs' practices, it is beyond the power of this Court to accurately and assuredly declare it "inevitable" that the Commission will apply the rule to Plaintiffs as they expect, particularly where the current version of the rule explicitly states that past litigation conduct will not be penalized. The Court must take the Commission at its word, unless and until it acts in the way Plaintiffs fear. The Commission has

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 9

1  demonstrated at least some concern for the legitimacy of its rule, revising it not only once, but

2  twice, in response to criticism and this legal challenge. To "firmly predict" that Plaintiffs will

3  suffer the injury they fear would require the Court to assume that the Commission will apply its

4  rule in a way that is contrary to its plain language.  Moreover, even according to Plaintiffs, their

5  prior litigation activities have resulted in *favorable* judicial findings, not adverse ones that could

6  arguably form the basis for a denial. *See* FAC, ¶¶ 68-87 ("*every* federal court that has considered

7  this issue has reached the same conclusion [in the investors' favor on LIHTC partnership

8  disputes].") (emphasis in FAC). Under these circumstances, denial of a hypothetical future

9  transfer application on grounds not stated anywhere on the face of the Commission's rule is

10  simply not "inevitable."

   2. *Hardship to the Parties of Withholding Consideration*

   As to the second inquiry under a ripeness analysis, Plaintiffs have also not demonstrated that withholding court consideration of their claims would cause them a hardship necessitating immediate adjudication. In their opposition to the Commission's motion, Plaintiffs outline the "hardship" they purport they will suffer: "The effect [of the Court withholding consideration of their claims] is to cloud Plaintiffs' participation in the LIHTC program with the fear that, by enforcing their rights, Plaintiffs will expose themselves to the WSHFC's unconstitutional discretion to exclude Plaintiffs from future participation." Pls.' Opp. at 10. Even Plaintiffs' own characterization of this putative hardship—as "clouding" their participation in the program with a "fear" of "exposure" to the Commission's "discretion" to exclude them from "future participation"—highlights the intensely contingent, speculative, and nebulous nature of the claimed hardship, dependent as it is on the occurrence of multiple events that are by no means

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 10

certain, or even well-defined. *Compare Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 751–52 (9th Cir. 2020) (issues ripe where agency action had "an immediate effect upon [Plaintiff] Skyline: its insurer promptly amended Skyline's plan."). The claimed hardship does not overcome the Court's reluctance to wade into a controversy before it is ripe.

### C. Whether Plaintiffs' Claims Related to the Report Should Be Dismissed

Finally, the Commission argues that the Court should dismiss whatever claims Plaintiffs may be making with respect to the Report. The FAC seeks an injunction "prohibiting the WSHFC or any of its members, employees, or agents . . . from enacting any new rule or regulation or engaging in any future conduct based on the Commission's erroneous interpretation of [the LIHTC program statute] as set forth in the Report." FAC, ¶ 29. The FAC also devotes substantial effort to criticizing the Report and questioning its legality. *See., e.g.*, *id*., ¶¶ 128-45. None of the causes of action articulated in the FAC, however, seek relief related directly or specifically to the Report. In addition, Plaintiffs fail to respond substantively to the Commission's argument, in its motion, that the Report is "government speech," not a policy or rule that would be subject to judicial review. Mot. at 14-15 ("Until the Commission adopts or applies any given policy or rule, there is no case or controversy and no ripe dispute for this Court to resolve."). In the absence of a specific articulation of what relief Plaintiffs may be requesting with respect to the Report, or citation to any legal support for such relief, the Court concludes that to whatever extent Plaintiffs intend to be asserting claims based on the Report, those claims must be dismissed as well.

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS

- 11

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Amended Complaint is hereby DISMISSED.

DATED this 24th day of August, 2021.

Barbara Jacobs Rothstein
U.S. District Court Judge

ORDER GRANTING DEFENDANT'S
MOTION TO DISMISS